### In re CHAPIN REVENUE CYCLE MANAGEMENT, LLC, Debtor.

### No. 8:05–BK–13469–ALP.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 7, 2006.

724

Michael C. Markham, Johnson, Pope, Bokor, Ruppel and Burns LLP, Clearwater, FL, for Debtor.

### ORDER ON CONFIRMATION AND MOTION FOR CRAMDOWN

(Doc. Nos. 124 and 143)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTERS under consideration in this Chapter 11 case of Chapin Revenue Cycle Management, LLC (Debtor) are the confirmation of the Debtor's Amended Plan of Reorganization (Doc. No. 124) (the Plan) and the Debtor's Motion for Cramdown (Doc. No. 143). The Plan was subsequently modified by the First, Second, and Third Modifications to Debtor's Amended Plan of Reorganization (Doc. Nos. 173, 176, 182, respectively) (together, the Modifications). At the confirmation hearing, this Court reserved ruling on whether Section 1129(a)(11) was satisfied, as well as whether the Debtor had satisfied the provisions of Section 1129(b)(1) with respect to the only non-accepting class of creditors—the secured claim of D.K. Smith Holdings Corporation, successor in interest to AmSouth Bank (D.K.Smith). This Court ruled that the remaining provisions of Section 1129(a) were satisfied. (Order on Confirmation Hearing, Doc. No. 150). D.K. Smith has objected to confirmation of the Plan on the basis that the requirements of 11 U.S.C. § 1129(a)(11) and (b)(2)(A) are not met: the Plan is not feasible; and, the Plan improperly treats D.K. Smith's unaccepting secured claim.

The matters relevant to the remaining issues as appear from the record and from the last Modification of the Plan may be summarized as follows.

The Debtor is in the business of providing auditing and collection services to hospitals and insurance companies for managed care receivables on a contingency fee basis. The Debtor began operating in January, 2003. The Debtor's initial capital requirements were met by loans from two sources: individuals (Friends & Family), including Keith Henthorne, the current President, Chief Executive Officer, and majority shareholder of the Debtor, and Katherine Seletos, a former officer, director, and member of the Debtor; and a line of credit taken out from AmSouth Bank. In 2004, Seletos left the Debtor and initiated litigation over her loans to the Debtor and money alleged to be owed to her by the Debtor under an employment agreement. In this same time period, AmSouth began litigation over the line of credit. AmSouth sued not only the Debtor, but also the principals of the Debtor who had given personal guarantees under the line of credit, including Henthorne and Seletos (the Guarantors). D.K. Smith subsequently acquired AmSouth's interest in the note and security agreement. (Debtor's Exh. 13).

As successor to AmSouth's fully matured claim, D.K. Smith filed a secured claim in the amount of $539,850.26. The Plan classifies the D.K. Smith claim in Class One. The Plan provides for D.K. Smith to retain its lien and receive payment in full by monthly payments of principal and interest at the contract rate, calculated on a ten year amortization basis, for sixty months, with a balloon payment due within thirty days following the sixtieth month. (Amended Plan, § 4.1). The Plan also provided for a temporary injunction in favor of the Guarantors. (Amended Plan, § 9.2).

The First Modification to Debtor's Amended Plan of Reorganization, filed January 23, 2006 (Doc. No. 173) (First Modification) extended D.K. Smith's lien to the Debtor's goods, furniture, fixtures, equipment. The First Modification also shortened the payment schedule, providing for the balloon payment after thirty-six months, and provided for a Note and Security Agreement to replace the original AmSouth loan documents.

The Second Modification to Debtor's Amended Plan of Reorganization, filed January 25, 2006, (Doc. No. 176) (Second Modification) enhanced the Debtor's reporting requirements and default events under the loan documents provided for by the First Modification, and limited the outside duration of the Guarantors Temporary Injunction to one year.

The Third Modification to Debtor's Amended Plan of Reorganization, filed on February 13, 2006, (Doc. No. 182) (Third Modification) shortened the balloon payment to the eighteenth month, restricted payments to Henthorne under the Plan, and eliminated the Temporary Injunction. As already determined, the Plan as Modified, has been approved by all impaired classes, but rejected by D.K. Smith whose claim is in Class One.

## FEASIBILITY OF THE PLAN AS AMENDED AND MODIFIED

▇▇▇▇ A court may not confirm a Chapter 11 plan of reorganization unless the plan meets certain requirements. 11 U.S.C. § 1129(a). One of these requirements is feasibility of the Plan, namely that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan ...." § 1129(a)(11). The proponent of the Plan must show that the Plan "offers at least a reasonable prospect of success and ... is workable." *In re Landmark at Plaza Park, Ltd.,* 7 B.R. 653 (Bankr.D.N.J.1980); *In re Haas,* 162 F.3d 1087, 1090 (11th Cir.1998). A showing of a reasonable assurance of success, not a guarantee of success, is required. *See In re New Midland Plaza Assocs.,* 247 B.R. 877, 885 (Bankr.S.D.Fla.2000); *In re Patrician St. Joseph Partners L.P.,* 169 B.R. 669, 674 (D.Ariz.1994) ("The mere potential for failure of the plan is insufficient to disprove feasibility.").

▇▇▇▇ In considering feasibility, a court looks at the earning power of the business; its capital structure; the economic conditions of the business; the continuation of present management; and the efficiency of management in control of the business after confirmation. *In re Immenhausen Corp.,* 172 B.R. 343, 348 (Bankr.M.D.Fla. 1994). Plans that involve "pipe dreams" or "visionary schemes" are not confirmable. *In re Sovereign Oil Co.,* 128 B.R. 585, 587 (Bankr.M.D.Fla.1991).

▇▇▇▇ This Court is satisfied that the projections in the Pro Forma Statements of Operations provided by the Debtor are realistic and, considering the earning power and the economic conditions of the Debtor's business, warrant the conclusion

that the Plan is not a "pipe dream." (*See* Ex. 2, Ex. D; Ex. 6). The updated Pro Forma projects net operating income of $328,641 in the year 2006, $382,582 in 2007, and $573,918 in 2008. (Ex. 6). After projected payments under the Plan, this would result in net income of $42,772 in the year 2006, $147,713 in 2007, and $339,049 in 2008. (*Id.*).

The Debtor has realized a significant savings in its previous expenses due to the rejection of its pre-petition lease for office space. The updated pro forma provides for a $300,000 reserve for the landlord, Teachers Insurance & Annuity Association of America, damage claim. (Ex. 6). The proof of claim actually filed was for $157,692.20. (Claim No. 24). The amount the Debtor will have to pay to the landlord as liquidated damages is actually overstated in the updated Pro Forma, giving a further cushion to the Debtor in its operating income projections.

The original Plan, as came up for consideration, provided that Henthorne would not have to repay $86,000 to the estate, would be a paid employee of the Debtor after reorganization, and would receive distributions under the Plan. The updated Pro Forma also does not reflect the changes made to the Plan by the Third Modification. Under the Third Modification, Henthorne will repay the approximately $86,000 bonus payment made to him by the Debtor, and the Debtor will not pay any salary to Henthorne nor make any distributions on behalf of Henthorne's Class Two claims until D.K. Smith's claim is paid in full. These changes will result in a savings of $22,100 per month.

The Debtor's previous experiences seem to indicate that the projected revenues will be difficult to reach. (*See* D.K. Smith Exhs. 3,4 (Debtor's Federal and state tax returns for the years 2003 and 2004)). However, these experiences reflect start-up expenses incurred by the Debtor when it began operations in 2003. Moreover, the current projections paint a different picture. The Debtor's summary of cash collateral reflects $234,721 in cash on hand and $381,894 in accounts receivable as of December 31, 2005, a 28% increase, or $133,089, in cash and accounts receivable post-petition. (Ex. 7).

Henthorne testified as to the basis of the Pro Forma statements, and that the Debtor has several new clients and new projects from existing clients. (Ex. 8). Although Henthorne testified that he does outside consulting work in addition to his management responsibilities with the Debtor, he also testified that he works full-time for the Debtor and is capable of managing the reorganization. There was also expert testimony that the Debtor would have no difficulty obtaining financing, so that making the balloon payment on time would not be a problem. Finally, Rene Zarate, the Debtor's accountant, testified that, in his opinion, based on the revenues the Debtor expects to generate from new and current clients, the Plan is feasible. This Court is satisfied that the Plan has a reasonable prospect of success and is workable.

## CRAMDOWN

One of the requirements for confirmation is that each impaired class of claims accept the plan. 11 U.S.C. § 1129(a)(8). Notwithstanding, a plan can be confirmed in spite of the failure of the impaired class to accept the Plan. The plan may be confirmed despite the rejection by an impaired class, if the plan does not discriminate unfairly, and is fair and equitable. § 1129(b)(1). A plan is fair and equitable with respect to a secured claim if, under the plan, the holder of the secured claim retains the lien securing the claim and receives payments over the life of the plan

totaling at least the allowed amount of the claim of a value as of the effective date, of the value of the secured claim. § 1129(b)(2)(A)(i). The requirement of payments with a value as of the effective date requires interest to offset the fact that payments are made over time, not upon the effective date of the plan. The plan may also be fair and equitable as to a secured claim if it provides for the indubitable equivalent to the secured party. § 1129(b)(2)(A)(iii). However, the Debtor need only satisfy one of these requirements, not all three. *Midland Plaza,* 247 B.R. at 891.

D.K. Smith's objection to cramdown is based on the contention that it will not receive the indubitable equivalent of its claim. The loan documents underlying the AmSouth line of credit contains several provisions related to events constituting default and financial reporting requirements that are not in the documents provided by the First Modification, the documents under which D.K. Smith's claim will be treated post-petition. Moreover, D.K. Smith argues that the guarantees underlying the documents are functionally unavailable due to the stay provided in favor of the Guarantors under the Plan.

■ The arguments of D.K. Smith, as they pertain to the Amended Plan of Reorganization, are well-taken. A plan of reorganization may not unfairly shift the risk of failure to the secured creditor. *In re Consul Rest. Corp.,* 146 B.R. 979 (Bankr. D.Minn.1992); *In re Miami Center Assocs. Ltd.,* 144 B.R. 937 (Bankr.S.D.Fla.1992); *In re Monarch Beach Venture, Ltd.,* 166 B.R. 428, 436 (C.D.Cal.1993). The Plan as offered at the hearing on confirmation had the effect of unfairly shifting the risk of failure of the Plan to D.K. Smith by limiting the availability of the guarantees, significantly narrowing the conditions upon which D.K. Smith could declare a default,

and eliminating financial reporting requirements on behalf of the Debtor.

■ However, even if these provisions in the Plan may have the effect of unfairly shifting the risk to D.K. Smith, the Modifications, as outlined above, cured those defects. The Second Modification provides for monthly reporting to D.K. Smith of the following: profit and loss statements; balance sheet; bank statements; and accounts receivable reports. (Second Modification, ¶ 1(a)). The Second Modification also provides for a default in the event the Debtor's accounts receivable and cash balance falls below $386,820.80 at the end of each calendar month. (Second Modification, ¶ 1(b)). Finally, the Second Modification provides for reasonable access of D.K. Smith to the Debtors books and records. (Second Modification, ¶ 1(c)).

The Third Modification to Debtor's Amended Plan of Reorganization, filed on February 13, 2006, (Doc. No. 182) (Third Modification), modifies the Plan in the following respects: provides for the balloon payment to be made within thirty days following the due date of the eighteenth monthly payment; provides for Henthorne to immediately repay to the Debtor the $86,543.56 bonus payment he received from the Debtor; restricts any salary payments to Henthorne until the DK Smith claim is paid in full; and defers distribution to Henthorne on account of his Class Two claims until the DK Smith claim is paid in full. (Third Modification, 1). The Third Modification also eliminates the temporary injunction in favor of the Guarantors in Section 9.2 of the Plan. (Third Modification, 2).

Based on the foregoing, with these modifications to the Plan, this Court is satisfied that the Amended Plan of Reorganization filed by the Debtor, as amended and modified, does not unfairly discriminate against the D.K. Smith and is fair and equitable, in

that D.K. Smith retains the lien securing its claim and will receive deferred cash payments totaling the full amount of its allowed secured claim, as required by 11 U.S.C. § 1129(b)(2)(A)(i)(I). Additionally, the Plan does not unfairly shift the risk of failure to D.K. Smith. Henthorne will not receive any distributions under the Plan until D.K. Smith's claim is paid in full.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Amended Plan of Reorganization (Doc. No. 124), as modified by the First, Second, and Third Modification to the Debtor's Amended Plan of Reorganization (Doc. Nos. 173, 176, 182) be, and the same is hereby, confirmed. It is further

ORDERED, ADJUDGED AND DE-CREED that the Debtor's Motion for Cramdown (Doc. No. 143) be, and the same is hereby, granted.

DONE AND ORDERED.